[Civ. No. 54549. First Dist., Div. Three. July 23, 1984.]

PENN-CO, Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF MONTEREY COUNTY,
Defendant and Appellant.

COUNSEL

Ralph R. Kuchler, County Counsel, and Jose Rafael Ramos, Senior Deputy County Counsel, for Defendant and Appellant.

Brian Finegan and James G. Heisinger, Jr., for Plaintiff and Respondent.

OPINION

**WHITE, P. J.**—This case involves the application of the doctrines of res judicata and collateral estoppel in an administrative law context. We conclude that the trial court erred in granting a writ of mandate to compel the Board of Supervisors of Monterey County (the Board) to grant a conditional use permit to Penn-Co, a general partnership, to allow it to build a commercial enterprise on property it had purchased in the county.

*Background*:

In April 1979 respondent Penn-Co entered into a contract to purchase about 1.2 acres of unimproved real property in Monterey County.

At the time the contract was made respondent Penn-Co made a deposit of $5,000. A "Deposit Receipt Addendum" recorded the parties' understanding that Penn-Co intended to construct a commercial development on the

property and that the "offer" was conditioned on Penn-Co's "ability to obtain all necessary approvals to accomplish same."

The original $5,000 was refundable to Penn-Co within 90 days if Penn-Co was not "satisfied with the approval process." On the 91st day, Penn-Co was to pay another $5,000, and from that point the $10,000 deposit was nonrefundable unless the seller failed to deliver title by December 15, 1979. Penn-Co did pay the total deposit in July 1979.

The subject property was zoned for commercial use at the time the purchase contract was made. The particular commercial uses Penn-Co had in mind (shops, a restaurant, and a parking lot) were allowed if a use permit had been obtained. The area where the subject property is located was originally zoned in 1946 as a "Retail Business District," and in 1969 it was rezoned as a "Highway Frontage District."

Penn-Co applied to the Zoning Administrator of Monterey County for a use permit in August 1979.[1]

In October 1979, Penn-Co's permit application was referred to the Monterey County Planning Commission for a determination as to whether the proposed development was consistent with the Toro Area Master Plan, which was a part of the Monterey County General Plan. This referral is not a procedure required by any ordinance and there are no rules governing it.

The planning commission considered the matter at a hearing on November 14, 1979. Penn-Co's attorney was present at the hearing, but there is no record of notice to any other parties. The planning commission's vote on whether to find the proposed development consistent was: zero ayes, four noes, and five abstentions. Penn-Co therefore "appealed" to the Monterey County Board of Supervisors.

On January 8, 1980, the supervisors held a public hearing on the issue of the consistency of Penn-Co's proposed use of the property with the general plan.

There is some question as to who appeared at this hearing before the Board. The trial court's finding of facts states that the supervisors received

---

[1]Penn-Co submitted a second permit application in January 1981. The trial court found that the two applications "were in fact one and the same application, and were treated by the County as a single application. The second application was made solely because the County's time for processing the original application, as provided in *Government Code Section* 65950 *et seq.,* was about to expire." This was agreed by stipulation and the parties do not dispute this finding on appeal.

a written staff recommendation, and that "County staff, the applicant, and members of the public testified on both sides of the issue [citation]." Appellant's brief, however, points out that the minutes of the January 8, 1980, hearing "reveal that various persons appeared in favor of finding the project consistent with the General Plan but that no one appeared opposed to finding the project consistent."

Actually the minutes are somewhat ambiguous. They contain the statement that "[v]arious persons appear in favor of finding the project consistent with the General Plan." By implication, this may mean that no one spoke against the finding of consistency. However, the minutes also record the appearance of the zoning administrator, who explained that the planning commission had "found the proposed use inconsistent" because it would be incompatible with the Toro plan's provisions for commercial use. The minutes also report that the supervisor's decision came "[a]fter discussion." This phrase implies at least some exchange of views, leaving open the question whether all viewpoints were represented.

In any case, the Board determined at the January 8, 1980, hearing that Penn-Co's proposed commercial use of the property was consistent with the Toro Area Master Plan.

Penn-Co closed escrow on January 15, 1980, paying $34,825.90 in cash and giving a promissory note for $101,250. The trial court found that this was done in reliance on the Board's "determination" of consistency on January 8, 1980. Also after the consistency finding, Penn-Co made arrangements for, and paid almost $5,000 in connection with, the preparation of the required environmental impact report. On February 26, 1981, the Monterey County Zoning Administrator granted respondent a use permit.

On March 27, 1981, a coalition of homeowners living near the subject property (Highway 68 Coalition) filed an appeal from the zoning administrator's issuance of the use permit on the ground that the proposed use was inconsistent with the general plan. A hearing was scheduled for May 19, 1981, and notice of the hearing was published in a local newspaper and posted on the property itself as well as on nearby property.

At the May 19, 1981, hearing, the board of supervisors granted the appeal, in effect overruling the zoning administrator's February 26, 1981, decision and denying the use permit.

Penn-Co applied to the superior court for declaratory judgment and a writ of mandamus. On November 18, 1981, the trial court issued a judgment declaring that the Board's denial of the use permit on May 19, 1981, was

barred by the principles of res judicata and estoppel, and granting a peremptory writ of mandamus to compel the supervisors to set aside the May 19, 1981, decision and to reinstate the use permit. It is from the superior court's November 18, 1981, judgment that the board of supervisors appeals.

*Discussion*:

■ Where the superior court has reversed a decision of an administrative agency after considering the administrative record and evidence produced in the writ proceedings, the reviewing court applies the substantial evidence rule to the trial court's factual determinations. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 261, p. 4251.) This rule of appellate review, of course, exists alongside the reviewing court's abiding obligation to reverse where there has been an error of law resulting in prejudice to the appealing party. (*Id.*, at pp. 4275-4277.)

1. *Whether res judicata applies.*

■ Appellant argues that the principle of res judicata does not apply in the instant case because the January 8, 1980, proceeding did not result in a final judgment or order on the issue of the use permit, and there was not sufficient notice to bind affected parties.

Respondents contend that the decision on January 8, 1980, was on an issue within the Board's "quasi-judicial authority," that it did not substantially affect any property rights, and that it became final when the time to file an action for administrative mandamus under Code of Civil Procedure section 1094.6, subdivision (b) had expired.

The trial court concluded that "the issue of consistency of [Penn-Co's] project with the General Plan [was] a matter already *adjudicated* by . . . [the] Board of Supervisors on January 8, 1980, and is not subject to *further adjudication* thereafter."

Res judicata is a doctrine which has only recently been applied to decisions of administrative agencies. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 160, 161, pp. 3304-3306.) It would pervert the doctrine to apply it when the administrative agency is not acting in a quasi-judicial capacity. It is essential to decide whether the January 8, 1980, hearing was an adjudicatory proceeding affecting property interests and requiring at least elementary due process. (See *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612 [156 Cal.Rptr. 718, 596 P.2d 1134].)

Respondents define the issue at the January 8 hearing as whether "two existing ordinances were consistent." The record shows, however, that the

question before the Board was whether Penn-Co's *proposed commercial use* of the particular piece of property was consistent with the Toro Area Master Plan. This was a threshold question in the process of deciding whether Penn-Co should be granted a use permit.

 "The question of who may or must be a party to an administrative proceeding is dependent upon the purpose and effect of the proceeding and the particular statute under which it is brought. [Citations.]" (*Nevada County Off. of Education* v. *Riles* (1983) 149 Cal.App.3d 767, 775, fn. omitted [197 Cal.Rptr. 152].) There is a clear policy in this state to involve the public and affected property owners at every level of the process when land use decisions are being made. The Legislature has declared that "California's land is an exhaustible resource, not just a commodity, and is essential to the economy, environment and general well-being of the people of California." (Gov. Code, § 65030.) And further, "[t]he Legislature recognizes the importance of public participation at every level of the planning process. It is therefore the policy of the state and the intent of the Legislature that each state, regional, and local agency concerned in the planning process involve the public through public hearings, informative meetings, publicity and other means available to them, and that at such hearings and other public forums, the public be afforded the opportunity to respond to clearly defined alternative objectives, policies, and actions." (Gov. Code, § 65033.)

Based inter alia on these express statements by the Legislature, the court in *Concerned Citizens of Murphys* v. *Jackson* (1977) 72 Cal.App.3d 1021 [140 Cal.Rptr. 531], held that a county could not, by local ordinance, deny affected property owners the right to appeal from the granting of a conditional use permit. (*Id.,* at pp. 1026-1027.) By the same token, we conclude that affected property owners cannot be excluded from an original proceeding whose purpose is to grant or deny a conditional use permit.

Respondent's analysis—that the January 8, 1980, hearing resulted in a final determination on the question of consistency and precluded any later denial of a permit for inconsistency—would transform that proceeding into one requiring notice to affected property owners, and an opportunity to be heard, under Government Code section 65033.

We conclude, however, that the basic nature of the issue originally put to the planning commission, and subsequently considered by the Board, was a request by the zoning administrator for advice from the planning commission. The procedure for making such a request was not set out in the ordinances, and no rules governed it. Clearly the planning commission's function when it originally considered the consistency issue was advisory. When

the planning commission failed to find Penn-Co's proposal consistent, the Board was asked to further consider the zoning administrator's query.

Appellants point out that the initial determination of consistency, whether made by the planning commission or by the Board, was not binding on the zoning administrator. Rather, it was a determination that was subject to a de novo proceeding before the zoning administrator, (see *People* v. *Gates* (1974) 41 Cal.App.3d 590, 598 [116 Cal.Rptr. 172]) who had the authority to grant or deny the use permit (Gov. Code, §§ 65903, 65904). At the public hearing on February 26, 1981, the consistency issue along with other considerations relevant to the granting of a use permit was finally decided. (See *Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511, 518-519 [169 Cal.Rptr. 904, 620 P.2d 565] [approval of conditional use permit is an adjudicative act].)

The record shows that the homeowners' coalition appealed from the February 26, 1981, decision.[2] This was their opportunity for "direct attack" on the granting of the use permit. They did so on the basis that the zoning administrator's determination that the proposed use of the property was consistent with the general plan, was incorrect. The record shows ample notice to all affected parties of the May 19, 1981, hearing on appeal. There is no doubt that, at the May 19 hearing on the granting of the use permit, where all interested parties had received notice, the Board was acting in its quasi-judicial capacity and its decision was binding on all parties. (See Gov. Code, §§ 65903, 65904, 65905; see also *City and County of San Francisco* v. *Ang* (1979) 97 Cal.App.3d 673, 679-680 [159 Cal.Rptr. 56].).)

Respondent argues that no notice was required in connection with the original planning commission's consideration of the consistency issue, because there was no specified procedure in the county ordinance governing a referral by the zoning administrator for a consistency determination by the planning commission. And it contends that notice given in connection with the Board's consideration of the matter after the planning commission's "failure to act" was sufficient because it met the requirements of the zoning ordinance. Apparently the only notice required for this hearing on the "appeal" from the commission's indecision was to "the appellant," in this case Penn-Co, and to the planning commission secretary.

---

[2]The record and briefs are curiously silent as to what notice was required or given in connection with the public hearing on February 26, 1981, at which the zoning administrator finally decided that the use permit should be granted. Presumably affected property owners and members of the public had an opportunity at this hearing by the zoning administrator, to oppose a finding of consistency. (See Gov. Code, § 65905.) Since respondent has not challenged the coalition's right to appeal from the zoning administrator's decision for failure to raise objections on February 26, we assume that this is not an issue.

Respondent also argues that the Board's January 8 decision cannot now be attacked because it became "final" when the time to file for administrative mandamus had expired. This argument begs the question since the homeowners' coalition could not be expected to appeal a decision from a proceeding to which they were not a party, and of which they had no knowledge.

Respondent cannot have it both ways. It cannot argue that the hearing was adjudicatory enough to bind the Board and the affected property owners at a later hearing—but not adjudicatory enough to require notice to those same property owners.

■ We hold that the finding of consistency on January 8, 1980, was not the result of an adjudicatory proceeding, and the coalition's appeal of the granting of the use permit, which challenged the consistency finding, was not barred by the principle of res judicata.

*2. Whether the Board was estopped from granting the appeal.*

■ The trial court concluded that appellant board of supervisors was estopped from granting an appeal of respondent Penn-Co's use permit on the ground of the inconsistency of its proposed project with the general plan.

Appellant argues that the county was not estopped for two related reasons. First is that Penn-Co did not sufficiently rely on the January 1, 1980, finding of consistency. The second is that the finding of estoppel on the facts of this case contravenes the important public policy of protecting the integrity of the zoning laws and the general plan.

■ The basic doctrine of equitable estoppel requires the presence of four factors: " '(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' " (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 489 [91 Cal.Rptr. 23, 476 P.2d 423].)

■ The doctrine may be applied against a governmental agency "when the elements requisite to such an estoppel . . . are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*Id.,* at pp. 496-497; see also, *County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826 [186 P.2d 124, 175 A.L.R. 747].)

The trial court found that respondent reasonably relied on the Board's January 8, 1980, consistency finding when it purchased the property for $135,000, paid $3,980 to the Board for preparation of an environmental impact report, and paid another $900 in connection with the preparation of materials necessary for consideration of the use permit application.

 We find as a matter of law that this reliance was unreasonable, and was insufficient to invoke the doctrine of estoppel particularly in the context of the importance to the public of maintaining the integrity of the general plan.

Respondent's reliance was unreasonable because it knew that the January 8, 1980, consistency finding was merely one step along the road to obtaining a permit. At the time Penn-Co closed escrow, paying $135,000 for the property, it knew that the use permit application process was far from complete. An environmental impact report had to be completed; the zoning administrator was required to hold a public hearing after that; and the zoning administrator's ultimate decision on the use permit was appealable. When Penn-Co purchased the property relying on the initial finding of consistency by the Board, before a final decision by the zoning administrator on the use permit application, it was taking a business risk. Penn-Co could not reasonably have assumed that that finding was absolute assurance that its application would not falter at another step along the way.

In addition, the trial court's judgment would unjustifiably broaden the exception to the general principle that equitable estoppel *shall not operate against a government agency except to avoid "grave injustice."* (*County of San Diego* v. *Cal Water etc. Co.*, supra, 30 Cal.2d 817, 826; see also *City of Long Beach* v. *Mansell*, supra, 3 Cal.3d pp. 498-499 ["manifest injustice"].)

 The cases make it clear that the party or parties invoking the doctrine of equitable estoppel against the government must show extensive reliance; this usually involves many individuals, or a plaintiff whose reliance consisted in giving up some fundamental right, or both these factors. (Eg., *City of Long Beach* v. *Mansell*, supra, 3 Cal.3d at p. 499 [state and city estopped to invalidate title where thousands of homeowners had settled on land over a period of many years]; *Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1 [143 Cal.Rptr. 430] [state and city estopped from departing from past practice of 20 years where union representing thousands of workers had failed to deliver agreements by date required by ordinance]; *Kaufman* v. *State of California* *(Cal.App.) [estoppel allowed

---

*Reporter's Note: Deleted on direction of Supreme Court by order dated April 13, 1983.

against Merit Award Board where plaintiff would otherwise lose right to file merit award and damages claims].)

Moreover, *even when sufficient reliance has been established,* estoppel will not operate against a government agency when it would "operate to defeat the effective operation of a policy adopted to protect the public." (*County of San Diego* v. *Cal. Water etc. Co., supra,* 30 Cal.2d 817, 826.

In *State of California* v. *Superior Court (Fogarty)* (1981) 29 Cal.3d 240 [172 Cal.Rptr. 713, 625 P.2d 256], the Supreme Court refused to invoke estoppel against the government because of the important benefit to the public involved, i.e., having a public trust in the 4,000 miles of shoreline along navigable lakes and rivers. (*Id.,* at pp. 244-246.) The court did not even discuss the extent of reliance of a large number of property owners along the shores of Lake Tahoe who had built piers or docks to the low water and had assumed for years that they held title in fee simple to the disputed shoreline. (*Id.,* at p. 243-244.)

The *County of San Diego, supra,* 30 Cal.2d 818, case is particularly instructive. In that case a private company wanted to build a dam which would require flooding land which included a public highway. (*Id.,* at p. 818.) The county had signed two agreements accepting easements granted by the company, which contained waivers for damages in the event the public highway was flooded. (*Id.,* at pp. 819-820.) The company built a dam, spending $800,000 on the project before the county filed an action to enjoin the flooding. (*Id.,* at p. 821.) The Supreme Court refused to invoke estoppel against the county. (*Id.,* at p. 825.)

The Supreme Court observed that "[t]he methods by which county boards of supervisors may abandon public highways are set forth in . . . the Streets and Highways Code. Public hearings, after proper notification, are required in most situations. . . . [¶] No statute authorizes the making of a contract to abandon a road. . . . [¶ And finally:] In the present case, since there has been no notice, hearing, finding as to public necessity, or resolution of abandonment, any agreement to relocate was unauthorized by law, and, under the authorities, was void." (*Id.,* at pp. 822, 823, 824.)

Similarly, in the instant case, the methods by which local legislative bodies may grant conditional use permits are governed by Government Code sections 65900-65909. Notice and a hearing are required on the application for a conditional use permit, and on an appeal taken from the local authority's action on such application. (Gov. Code, §§ 65902-65905.) No statute authorizes a board of supervisors to approve a use permit without notice to affected property owners. In the instant case, where the initial con-

sistency determination was made in a nonadjudicatory proceeding without notice to affected property owners, such determination cannot be the basis of an estoppel. To hold otherwise would allow that initial advisory determination to substitute for the processes set out by state statute and county ordinances adopted pursuant to state law.

As discussed above, we must examine whether refusal to invoke an estoppel will work such a "grave injustice" on Penn-Co. that the general rule against invoking estoppel against public agencies should not be followed. (See *County of San Diego* v. *Cal. Water etc. Co.*, *supra*, 30 Cal.3d 817.) Penn-Co will lose its expected future profits from the proposed commercial project. There is no showing that construction had actually begun, as indeed it could not since no use permit has been issued. (Cf., *Pettitt* v. *City of Fresno* (1973) 34 Cal.App.3d 813, 817 [110 Cal.Rptr. 256].) Presumably, Penn-Co will sell the property. At worst, the company will sustain some financial loss if it cannot sell the property at a price which will cover the amounts it spent in connection with applying for a permit. Surely this possibility is an inherent risk in any business venture. And there remains the possibility that it will sell the property at a significant profit, though concededly perhaps at less of a profit than it might have realized had its project been completed. Still, neither of these situations would be a "manifest injustice" to Penn-Co. (See *City of Long Beach* v. *Mansell*, *supra*, 3 Cal.3d 462.)

Although the trial court found that the injustice which would result to Penn-Co outweighed any effect on public policy or public interest, we note that this case, in which estoppel has been applied against a public agency, " ' "must be examined carefully and rigidly to be sure that a precedent is not established through which, by favoritism or otherwise, the public interest may be mulcted or public policy defeated." [Citation.]' " (*Pettitt* v. *City of Fresno*, *supra*, 34 Cal.App.3d at p. 820, citation omitted.) The *Pettitt* court observed that "the public and community interest in preserving the community patterns established by zoning laws outweighs the injustice that may be incurred by the individual in relying upon an *invalid* permit to build issued in violation of zoning laws," (*id.*, at p. 820, original italics) and distinguished cases in which plaintiffs had relied on valid permits. (*Id.*, at p. 821.) In the instant case, of course, Penn-Co had no permit at all; it "relied" on the successful completion of one of many interim steps to *obtaining* a permit, which was eventually *denied*. (See *Chaplis* v. *County of Monterey* (1979) 97 Cal.App.3d 249, 257 [158 Cal.Rptr. 395], [damages sustained *before* permit obtained].)

The board of supervisors had no power to nullify the legal ordinances and statutes which provided for a noticed, public hearing on the appeal from the

zoning administrator's granting of the use permit. Certainly the January 8, 1980 hearing cannot be given the effect of creating such a power. (See *Pettitt, supra* 34 Cal.App.3d at p. 821.)

The Legislature enacted measures in 1971 requiring subdivisions and zoning ordinances to be consistent with the county or city's general plan, so that such plans "now embody fundamental land use decisions that guide the future growth and development of cities and counties." (*City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 532 [160 Cal.Rptr. 907].) The decision to allow a conditional use permit is an issue of vital public interest. It affects the quality of life of everyone in the area of the proposed use. Private commercial enterprises should not be allowed to circumvent the decisionmaking process on such an issue which is broadly governed by state law and refined by local legislative bodies to meet the needs and concerns of their own areas.

*Conclusion*:

Neither res judicata nor collateral estoppel may be applied against the Board. It acted properly and in accord with the law at its public hearing, when it disapproved the conditional use permit which the zoning administrator had granted to respondent Penn-Co. The judgment of the superior court granting the writ of mandate is reversed.

Scott, J., concurred.

Barry-Deal, J., concurred in the judgment.