[No. B058763. Second Dist., Div. Six. May 26, 1992.]

NORMAN D. SMITH, Plaintiff and Appellant, v.
COUNTY OF SANTA BARBARA, Defendant and Respondent;
TMC COMMUNICATIONS, Real Party in Interest and Respondent.

## COUNSEL

Alan A. Blakeboro for Plaintiff and Appellant.

David Nawi, County Counsel, Stephen Shane Stark and Cynthia Jean Manzer, Deputy County Counsel, for Defendant and Respondent.

Hollister & Brace and Paul J. Neibergs for Real Party in Interest and Respondent.

## OPINION

GILBERT, J.—After a public hearing, the County of Santa Barbara (County) found that it issued a land use permit in error, but that it was estopped from revoking the permit. The superior court denied a petition for a writ of administrative mandate to require the County to revoke the permit.

We hold that a public entity may be estopped from enforcing the law only in extraordinary cases. This case is not one of them. There is no substantial evidence to support the County's finding of reasonable reliance on the land use permit. We reverse.

### FACTS

Several businesses have erected communication facilities on Gibralter Peak in Santa Barbara County. The land is zoned for single family residences, but communications facilities are allowed as a conditional use.

In 1984 a conditional use permit was granted to "Comsite/Bud-North Shore, Inc." to build "FM,and TV Facilities" on a Gibralter Peak parcel. The permit made no reference to microwave or telephone communications.

Thereafter TMC Communications wanted to build a telephone microwave station on the parcel. TMC hired Raymond Yount, a former County employee familiar with County zoning regulations, to help it apply for the permits.

Instead of applying for its own conditional use permit, which would have required an environmental impact report, TMC sought to rely on the conditional use permit already obtained by Comsite. The County went along with TMC's plan. On December 10, 1987, the resource management department issued a land use permit for three towers with one microwave dish per tower. In issuing the permit, resource management found that TMC's project was in "substantial conformity" with the existing conditional use permit.

On December 11, 1987, the building department issued a building permit. Eleven days later TMC's agent Yount submitted drawings to the building department showing a different shape to the antenna support towers and two microwave dishes per support tower instead of one. The drawings were labeled "revised structural details." Despite the drawings, Yount represented the total number of dishes would remain at three. The building department authorized the revisions, but, in fact, had no authority to authorize more dishes than the three that had been approved by resource management. TMC's agent Yount knew, or should have known, this.

When construction started, a neighboring property owner, Norman Smith, complained to the County. Based on the complaint and on evidence TMC was installing five instead of three dishes, the County issued a stop work order. Two weeks later the County rescinded the stop work order.

Smith appealed the validity of the permit and the withdrawal of the stop work order to the planning commission. After public hearings, the commission denied the appeal, finding that TMC had made substantial expenditures on a three-dish antennae system in reliance on the land use permit.

Smith appealed to the County board of supervisors. At the hearing, TMC's vice-president and chief technical officer, James Speirs, testified that TMC had installed five microwave dishes at Gibralter Peak and that the "removal of any of the dishes from Gibralter Peak will result in degraded service to our customers and would essentially cause us to be noncompetitive with other carriers in the area." He also testified that TMC had about $500,000 invested at the site, and that construction was about 90 percent complete when resource management issued its stop work order.

Smith submitted general studies showing that microwave radiation may pose a health risk. The Federal Communications Commission, however,

which had studied Gibralter Peak, concluded there was no risk from the existing facilities.

The board denied the appeal. It found that the land use permit was not in substantial conformity with the conditional use permit on which it was based, and that an environmental assessment should have been prepared prior to issuing a proper conditional use permit for TMC's project. Nevertheless, TMC expended substantial sums in good faith reliance on the land use permit, and thus has a vested right to maintain three antennas with one dish each. The harm to TMC if authority to operate the facilities were to be withdrawn would substantially outweigh any harm to the public or the environment.

Smith petitioned the superior court for a writ of administrative mandate. Smith appeals from the denial of the petition.

## DISCUSSION

### I

Smith contends estoppel cannot be applied against a government to validate a permit for a use that violated zoning law.

The leading case on governmental estoppel is *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423]. There, the question was whether the State of California and the city were estopped from claiming an interest in public tidelands that the state and city had allowed to be developed as private property since the turn of the century. The case was complicated by former article XV, section 3 (now art. X, § 3) of the California Constitution which forbade the transfer of certain public tidelands to private persons. The court had to decide whether an estoppel that would have the effect of quieting title to public lands in private persons could apply in the face of public policy reflected in a constitutional provision forbidding transfer.

The court set forth a "broad and comprehensive standard" for making such a decision: "The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach* v. *Mansell, supra*, 3 Cal.3d 462, 496-497.)

Applying this standard to the facts of the case, the court held that the state and city were estopped. The court stated that thousands of citizens relied on the state's and city's treatment of the tidelands as private property over a long period of time, and it would be a manifest injustice to allow the public entities to claim an interest in the land now. (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 499.)

In balancing this injustice against the policy forbidding the transfer of public tidelands, the court took into consideration that the development of the area provided an array of public facilities and did not result in an area withdrawn from the public. But what the court believed was even more significant in assessing the effect of estoppel on public policy is that "the rare combination of government conduct and extensive reliance here involved will create an extremely narrow precedent for application in future cases." (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 500.)

Because in *Mansell* our Supreme Court applied estoppel in the face of a constitutional provision, we see no reason why estoppel could not be applied in the face of a zoning ordinance,[1] but only in the most extraordinary case where the injustice is great and the precedent set by the estoppel is narrow.

This is not the extraordinary case. Assuming for the moment that all the elements for estoppel against a private party are present here, there is little to distinguish this case from any other case where a party claims reliance on a governmental permit. This case does not establish a narrow precedent, such as the one in *Mansell,* where thousands of people rely on governmental policy for a long period of time. The instant case would establish a broad precedent allowing government to operate in violation of its own laws.

It is not enough to say that public policy will not be adversely affected by the application of estoppel because TMC's structure creates no health or environmental hazard. The point is that public policy may be adversely affected by the creation of precedent where estoppel can too easily replace the legally established substantive and procedural requirements for obtaining permits. As the court in *City of Imperial Beach* v. *Algert* (1962) 200 Cal.App.2d 48, 52 [19 Cal.Rptr. 144], stated, "each case [of governmental estoppel] must be examined carefully and rigidly to be sure that a precedent is not established through which, by favoritism or otherwise, the public

---

[1]Because former article XV, section 3 of the California Constitution had been interpreted to allow transfer under "narrowly limited circumstances," the court in *Mansell* did not decide whether estoppel could apply where the governmental entity "utterly lacks the power to effect that which an estoppel against it would accomplish." (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 499.) That question is not raised here either because the County does not "utterly lack the power" to grant the proper permits for TMC's project.

interest may be mulcted or public policy defeated." (Cited with approval in *City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 495, fn. 30.)

Our decision here is in line with the vast majority of cases which hold that a governmental entity is not estopped from enforcing the law. (See, e.g., *Pettitt* v. *City of Fresno* (1973) 34 Cal.App.3d 813, 820 [110 Cal.Rptr. 262]; *Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720 [125 Cal.Rptr. 896, 543 P.2d 264]; *Chaplis* v. *County of Monterey* (1979) 97 Cal.App.3d 249, 258-259 [158 Cal.Rptr. 395]; *People* ex rel. *Dept. Pub. Wks.* v. *Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804, 812-813 [114 Cal.Rptr. 499]; but see *Anderson* v. *City of La Mesa* (1981) 118 Cal.App.3d 657, 661 [173 Cal.Rptr. 572].)

Contrary to the County's contention, the question whether estoppel should apply is not solely a question of fact. Whether the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify the effect of the estoppel on the public interest must be decided by considering the matter from the point of view of a court of equity. (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 496-497.) In this case the precedent established by applying estoppel would be so broad that no court of equity could justify the harmful effect of its application on the public interest.

## II

■ Moreover, as an independent ground for reversal, we agree with Smith that there is no substantial evidence TMC relied on the land use permit.

■ "The substantial evidence rule provides that where a finding of fact is attacked on the ground it is not sustained by the evidence, the power of the appellate court begins and ends with a determination whether there is any substantial evidence, contradicted or uncontradicted, which supports the finding. [Citation.] An appellate court is without power to judge the effect or value of the evidence, weigh the evidence, consider the credibility of witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. [Citation.] . . . In determining the existence of substantial evidence the reviewing court does not limit its review to evidence favorable to the respondent, but looks to the entire record. [Citation.]" (*Kimble* v. *Board of Education* (1987) 192 Cal.App.3d 1423, 1427-1428 [238 Cal.Rptr. 160].)

Where, however, the evidence is susceptible of only one reasonable inference, the question becomes one of law. (*Fagerquist* v. *Western Sun Aviation, Inc.* (1987) 191 Cal.App.3d 709, 719 [236 Cal.Rptr. 633].)

■ The board of supervisors found that TMC relied on a land use permit that was limited to the installation of three microwave dishes. To show reliance on that permit, the County points to the testimony of James Speirs, TMC's vice-president and chief technical officer. But Speirs did not testify that TMC relied on the permit to build a three-dish system. Instead, Speirs testified TMC had installed five microwave dishes and that all five dishes were necessary for the system to operate correctly and for TMC to be competitive with other carriers.

Add to Speirs's testimony the undisputed evidence that TMC submitted to the building department plans showing more than three microwave dishes, and the conclusion is inescapable TMC never intended to build a system limited to three dishes. The only reasonable conclusion is that TMC did not intend to rely on the limited land use permit.

Judgment denying the writ of mandate is reversed. Costs are awarded to Smith.

Stone (S. J.), P. J., and Yegan, J., concurred.