[No. B233295. Second Dist., Div. Eight. Oct. 10, 2012.]

WEST WASHINGTON PROPERTIES, LLC, Plaintiff and Appellant, v. DEPARTMENT OF TRANSPORTATION, Defendant and Respondent.

**COUNSEL**

Luce, Forward, Hamilton & Scripps and Gerald M. Murphy for Plaintiff and Appellant.

Ronald W. Beals, Thomas C. Fellenz, Cristiana I. Rojas, O. J. Solander and Roger A. Formanek for Defendant and Respondent.

**OPINION**

**BIGELOW, P. J.**—This case concerns an advertising display California's Department of Transportation (Caltrans) found was in violation of the Outdoor Advertising Act, Business and Professions Code section 5200 et seq. (the Act).[1] The owner of the display, West Washington Properties, LLC (West Washington), argued equitable estoppel and laches barred the agency from

---

[1] All further statutory references are to the Business and Professions Code unless otherwise noted.

enforcing the Act, or formed the basis of an inverse condemnation claim. The trial court rejected these arguments. We affirm the trial court judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We adopt some of the background from our previous unpublished opinion.

In 1999, West Washington bought a building at 155 West Washington Boulevard in Los Angeles. On the side of the building was an advertising space, referred to as a "wallscape," measuring approximately 8,000 square feet. West Washington believed the wallscape had been in place since 1984, and was first installed in connection with the 1984 Olympics. When West Washington purchased the building, it located permits from the City of Los Angeles for the wallscape. West Washington did not contact Caltrans to determine whether there were state-issued permits. The wallscape displayed advertising visible from the I-10 Interstate Highway.

In March 2006, a Caltrans field inspector took note of the wallscape and determined it violated the Act because it did not have a permit (§ 5350), and exceeded 1,200 square feet (§ 5408).[2] Although the wallscape had been in use since 1984 without a permit, Caltrans had never before issued a notice of violation. In November 2006, Caltrans issued an "amended" notice of violation to West Washington.[3]

*Administrative Proceedings*

West Washington contested the notice of violation. In advance of a January 2007 administrative hearing, the parties stipulated to several facts. The parties stipulated that "[t]he wallscape exceeds 1,200 square feet and is located within 660 feet of Interstate 10. The wallscape is approximately 8,000 square

---

[2] Section 5350 provides: "No person shall place any advertising display within the areas affected by the provisions of this chapter in this state without first having secured a written permit from the director or from his authorized agent." Section 5405 limits permissible advertising displays within 660 feet from an interstate or primary highway. Section 5408 provides, in relevant part: "In addition to the advertising displays permitted by Section 5405 to be placed within 660 feet of the edge of the right-of-way of interstate or primary highways, advertising displays conforming to the following standards, and not in violation of any other provision of this chapter, may be placed in those locations if placed in business areas: [¶] (a) Advertising displays may not be placed that exceed 1,200 square feet in area with a maximum height of 25 feet and a maximum length of 60 feet, including border and trim, and excluding base or apron supports and other structural members."

[3] Clear Channel Outdoor, Inc., was also originally cited with violating the Act. Pursuant to a settlement agreement between the parties, Caltrans dismissed the accusation against Clear Channel. The amended notice of violation was issued to West Washington alone. West Washington agreed to reduce the advertising area of the wallscape to 1,200 square feet while the litigation was pending.

feet." The parties also stipulated: "The wallscape does not have a permit from [Caltrans]. No one has ever applied to [Caltrans] for a permit for the wallscape before [Caltrans] issued the November 17, 2006 notice of violation. Before issuing [West Washington] the notice of violation, [Caltrans] has never cited anyone connected to the wallscape for violating any provision of the Act or its regulations." Caltrans's evidence at the hearing included a photograph dating from 1980 which shows the West Washington building without the wallscape.

West Washington argued Caltrans should be estopped from enforcing the Act as to the wallscape because so much time had passed without the agency taking any action. West Washington contended that the opportunity to profit from the wallscape was the significant motivation for its purchase of the building. It also represented that it had rejected offers in the millions of dollars for the sale of the display, based on the assumption that it would be able to continue legally operating the wallscape. West Washington asserted its agreement to temporarily reduce the size of the wallscape would cost it $50,000 per month in revenue. It further contended that if forced to permanently reduce the size of the wallscape, it would lose "the entire capitalized future value of the gross revenue (net of agency commissions) generated by the wallscape which calculated at conventional industry cap rates exceeds $12,000,000."

In support of its equitable arguments, West Washington argued Caltrans knew or should have known of the wallscape years before it issued a citation. West Washington claimed Caltrans investigators must have driven past the extremely conspicuous wallscape and could not have missed it because it was so large. West Washington further pointed to photographs in Caltrans files that reflected both portions of the highway and the wallscape. The earliest photograph to include the wallscape was from 1985. West Washington contended there were no similarly situated sign owners, thus applying estoppel would not create a precedent. Caltrans responded with evidence demonstrating that in 2005 and 2006, it cited the owners of seven unrelated advertising signs for violations of the Act's size requirements. The Caltrans employees who testified at the hearing could offer only suppositions to explain why Caltrans had not issued a notice of violation or taken other enforcement actions before 2006. However, these witnesses testified about Caltrans's recordkeeping system for advertising display permits, and indicated there was no record of a permit for the wallscape.

The administrative law judge issued a proposed decision finding the wallscape violated the Act, but equitable estoppel and laches barred Caltrans from enforcing the Act's provisions. The Caltrans director only partially adopted the administrative law judge's findings. The director determined that

under *People ex rel. Dept. of Transportation v. Outdoor Media Group* (1993) 13 Cal.App.4th 1067 [17 Cal.Rptr.2d 19], and *People ex rel. Dept. Pub. Wks. v. Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804 [114 Cal.Rptr. 499] (*Ryan*), the equitable defenses of estoppel and laches would not apply to prevent removal of a condition deemed a nuisance per se by statute.

### Superior Court Proceedings

West Washington filed a petition for writ of administrative mandamus and complaint for damages in the superior court. In addition to challenging the administrative decision, the joint petition and complaint asserted a claim under 42 United States Code section 1983 alleging Caltrans violated West Washington's civil rights. The trial court concluded equitable defenses would not bar Caltrans from enforcing the Act and denied the petition. The court sent the case to a different division for further proceedings on the section 1983 claim. The parties subsequently stipulated to the dismissal of the section 1983 claim without prejudice. West Washington appealed the order denying the petition for writ of administrative mandamus. In an unpublished opinion, we dismissed West Washington's appeal for lack of jurisdiction. (*West Washington Properties, LLC v. California Department of Transportation* (Oct. 1, 2009, B209932) (app. dism.) [nonpub. opn.].)

West Washington filed an amended petition for writ of administrative mandamus and complaint for inverse condemnation and damages (petition). The petition's arguments were again based on estoppel and laches theories. The petition also alleged the wallscape was presumed legal under section 5216.1 and Caltrans was estopped from rebutting the presumption of legality. Caltrans demurred to the amended petition. The trial court sustained the demurrer with leave to amend as to the inverse condemnation claim only. West Washington filed a second amended petition, to which Caltrans also demurred. In the second amended petition, West Washington alleged Caltrans has moved offices several times since 1984 and lost many of its records. West Washington further contended: "Because of that loss of evidence and the passage of time, the basis for the decision [in] 1984 and the continuing failure to enforce for many years thereafter cannot be determined . . . . Now that the witnesses are dead or long gone, the documents are lost and 22 years have transpired; Caltrans are [*sic*] estopped to overcome the presumed legality of this Wallscape without paying compensation." The trial court concluded equitable principles would not apply and sustained the second demurrer without leave to amend. This appeal followed.

## DISCUSSION

I.  *The Trial Court Properly Denied the Petition for Writ of Administrative Mandamus*

    A.  *Standard of Review*

"The claim essentially attacks the [agency's] order as an abuse of discretion. Code of Civil Procedure section 1094.5 permits trial court review of quasi-judicial administrative decisions, that is, decisions that result when the agency has exercised its discretion and applied the governing regulations and law to a particular factual situation. For this purpose, an abuse of discretion is established if the respondent has not proceeded in the manner required by law, the decision is not supported by the findings, or the findings are not supported by the evidence. [Citation.] To the extent the question turns on factual disputes, we review the trial court's ruling in the light most favorable to the judgment, considering only whether it is supported by substantial evidence. [Citation.] Where . . . the facts are undisputed, and there is only one inference to be drawn, whether estoppel applies is a question of law. Finally where . . . the issues require a weighing of policy concerns, they present a question of law. [Citations.]" (*Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 256–257 [80 Cal.Rptr.3d 876] (*Golden Gate*).)

    B.  *Section 5216.1*

On appeal, West Washington contends the wallscape must be considered lawful under section 5216.1. We disagree.

Section 5216.1 provides: " 'Lawfully erected' means, in reference to advertising displays, advertising displays which were erected in compliance with state laws and local ordinances in effect at the time of their erection or which were subsequently brought into full compliance with state laws and local ordinances, except that the term does not apply to any advertising display whose use is modified after erection in a manner which causes it to become illegal. There shall be a rebuttable presumption pursuant to Section 606 of the Evidence Code that an advertising display is lawfully erected if it has been in existence for a period of five years or longer without the owner having received written notice during that period from a governmental entity stating that the display was not lawfully erected."[4]

---

[4] Evidence Code section 606 states: "The effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact."

■ Section 5216.1 does not provide a complete defense to an alleged violation of the Act. Instead, by its own terms, it merely shifts the burden of proof. West Washington's section 5216.1 argument was rejected at each stage in the proceedings below. The administrative law judge concluded: "[R]espondent proffered additional arguments in its trial brief that the wallscape is presumed legal, pursuant to . . . section 5216.1 and that the wallscape complies with municipal ordinances. Those arguments do not, by themselves or together, offer Respondent a defense." The proposed decision found the wallscape violated the Act. The final agency decision adopted this finding. The trial court subsequently concluded the wallscape violated the Act, implicitly and explicitly rejecting West Washington's arguments under section 5216.1. Because this is a question of fact—whether Caltrans rebutted the presumption that the wallscape was "lawfully erected" within the meaning of section 5216.1—we review the trial court finding for substantial evidence. (*Sameyah v. Los Angeles County Employees Retirement Assn.* (2010) 190 Cal.App.4th 199, 208 [117 Cal.Rptr.3d 893]; *Estate of Odian* (2006) 145 Cal.App.4th 152, 167 [51 Cal.Rptr.3d 390]; *Shadow Traffic Network v. Superior Court* (1994) 24 Cal.App.4th 1067, 1087 [29 Cal.Rptr.2d 693].)

As stated above, section 5216.1 defines "lawfully erected" as an advertising display erected in compliance with state laws and local ordinances at the time of erection, or subsequently brought into compliance with relevant laws. Section 5216.1 only creates a rebuttable presumption. Even if Caltrans—or other government entities—have failed to issue a notice of violation within five years of the erection of an unlawful display, section 5216.1's only purpose is to shift the burden of proof of unlawful erection to Caltrans. It neither renders a display lawful as a matter of law, nor estops Caltrans from proving the display was not lawfully erected.[5]

In this case, the evidence adduced at the administrative hearing consisted in large part of stipulated facts. The parties stipulated that West Washington believed the wallscape was erected in 1984 and is approximately 8,000 square feet, and is within 660 feet of an interstate highway. In 1984, the Act prohibited advertising displays larger than 1,200 square feet in business areas within 660 feet of an interstate. (§ 5408.) In 1984, the Act also required that displays subject to the Act have a permit before being placed. (§ 5350.)[6] The parties stipulated that no one had ever applied for a permit for the wallscape.

---

[5] We also note that even a lawfully erected sign may be subject to removal if it violates current law. (See, e.g., § 5461; *People ex rel. Dept. of Transportation v. Maldonado* (2001) 86 Cal.App.4th 1225, 1235–1236 [104 Cal.Rptr.2d 66].) However, under section 5412, an advertising display that was "lawfully erected" may not be compelled to be removed without payment of compensation, except as provided by the Act.

[6] In 1984, section 5408 stated, in relevant part: "In addition to the advertising displays permitted by Section 5405 to be placed within 660 feet of the edge of the right-of-way of interstate or primary highways, advertising displays conforming to the following standards, and

This was substantial evidence that, despite Caltrans's failure to issue a notice of violation, the wallscape was not "lawfully erected," in that it was not in compliance with state law in effect at the time it was erected.

■ West Washington argues the lack of a permit does not rebut the presumption. We reject this argument. The lack of a permit may rebut the presumption of lawful erection if Caltrans establishes a permit was required for the display and none was sought or issued. Such was the case here. The parties stipulated to facts indicating the display came within the purview of the Act, and that no one ever sought a permit for the display despite the statutory requirements. In addition, there was evidence at the hearing establishing there was no permit on record for the wallscape. Further, the section 5216.1 presumption was also rebutted by evidence that the wallscape violated the Act by exceeding relevant size requirements.

■ West Washington also contends Caltrans could only rebut the presumption by providing a reason for its nonenforcement of the Act. This is incorrect. Section 5216.1 does not require that Caltrans explain why it failed to enforce the provisions of the Act. Instead, when the presumption is applicable, Caltrans must establish the display was not erected in compliance with state laws and local ordinances in effect at the time of erection. Here, the parties stipulated to facts making it clear the display was not in compliance with the Act when it was erected, and there was additional evidence admitted at the administrative hearing that served the same purpose. Substantial evidence supported a trial court finding that the section 5216.1 presumption was rebutted.

### C. *Equitable Estoppel and Laches*

West Washington contends the trial court committed prejudicial error in rejecting the equitable estoppel and laches defenses. We disagree.

■ " 'Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be

---

not in violation of any other provision of this chapter, may be placed in those locations if placed in business areas: [¶] (a) Advertising displays shall not be placed which exceed 1,200 square feet in area with a maximum height of 25 feet and a maximum length of 60 feet, including border and trim, and excluding base or apron supports and other structural members." (Stats. 1983, ch. 653, § 14, p. 2582.) In 1984, section 5350 contained the same language as the current version: "No person shall place any advertising display within the areas affected by the provisions of this chapter in this state without first having secured a written permit from the director or from his authorized agent." (Stats. 1970, ch. 991, § 2, pp. 1764, 1771.) This language has been in place since 1939. (Stats. 1939, ch. 32, § 1, pp. 333, 335; *People ex rel. Dept. Pub. Wks. v. Golden Rule Church Assn.* (1975) 49 Cal.App.3d 773, 777 [122 Cal.Rptr. 596].)

apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' [Citation.]" (*Golden Gate, supra*, 165 Cal.App.4th at p. 257.) Estoppel will not apply if any one of the elements is missing. (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1360 [56 Cal.Rptr.3d 591] (*Feduniak*).)

When equitable estoppel is asserted against a governmental agency, there are additional considerations. As explained in the seminal case *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423] (*Mansell*): "The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and . . . the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*Id.* at pp. 496–497, 500.) Yet, "an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public . . . .' " (*Id.* at p. 493.) In *Mansell*, our Supreme Court noted that the government will be estopped only in an "exceptional case." (*Id.* at p. 501.)

■ In accordance with the principles explained in *Mansell*, the weight of the authority indicates government inaction rarely forms a proper basis to estop the government from enforcing a law intended to benefit the public. Cases reaching this result are numerous, and they include cases involving the Act. For example, in *Ryan, supra*, 39 Cal.App.3d 804, the Department of Public Works (department) sought removal of billboards that violated the Act, even though it had demanded the advertiser move the signs, then issued permits for the offending billboards in a nonconforming location. (39 Cal.App.3d at pp. 807–808.) The advertiser argued the department was estopped from requiring removal of the billboards. The Court of Appeal rejected this argument. It concluded the department did not have the authority to issue permits to the advertiser for the billboards, or to represent that it would be permissible to move the billboards to a nonconforming location. The court explained: " 'Estoppel may be invoked against a governmental agency only when the agency has the power to do that which it promised to do or which it led the opposing party reasonably and justifiably to believe it would do. Where, however, the procedure specified in a statute is the measure of the agency's power to act, estoppel cannot be applied to enlarge that power. [Citation.]' " (*Id.* at p. 812.)

The *Ryan* court also determined "that to apply estoppel would effectively nullify a strong public policy adopted for the benefit of the public and we

view the illegal placing of billboards in violation of the Outdoor Advertising Act in the same category as that involved in permission to expand a nonconforming use. Equitable principles therefore will not protect [the advertiser] from being required to remove the billboards in the case at bench." (*Ryan, supra,* 39 Cal.App.3d at p. 813; see *Pettitt v. City of Fresno* (1973) 34 Cal.App.3d 813 [110 Cal.Rptr. 262].)

Similarly, in *People ex rel. Dept. of Transportation v. Outdoor Media Group, supra,* 13 Cal.App.4th 1067 (*Outdoor Media*), the Court of Appeal refused to apply estoppel to prevent enforcement of the Act. The advertiser applied for permits to erect billboards, but Caltrans refused to issue the permits because the billboards would violate the Act. The advertiser erected the billboards without permits. (13 Cal.App.4th at p. 1073.) When Caltrans sought an injunction to compel removal of the billboards, the advertiser argued, in part, that Caltrans was estopped from enforcing the Act because it had a past practice of issuing permits retroactively. (13 Cal.App.4th at p. 1074.) In a brief analysis, the court held: "Equitable defenses such as estoppel do not apply because the Act defines [the advertiser's] violation as a nuisance per se. '[N]either the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public. [Citations.]' (*County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826 [186 P.2d 124].)" (13 Cal.App.4th at p. 1078, fn. omitted.)

More recently, courts have refused to apply estoppel to prevent government enforcement actions in other land use contexts, despite lengthy delays in enforcement. In *Feduniak,* the California Coastal Commission ordered coastal homeowners to remove a golf course from their property in accordance with government restrictions on permissible landscaping. The golf course was installed in 1985. The commission did not inspect the site for compliance until 2002, at which time it notified the property owners of the violation. (*Feduniak, supra,* 148 Cal.App.4th at pp. 1355, 1358.) The golf course was plainly visible from areas commissioners had visited during the 18-year period. (*Id.* at p. 1356.) The property owners asserted the commission should be estopped from enforcing orders requiring removal of the golf course and restoration of native landscaping. (*Id.* at pp. 1355–1356.)

The Court of Appeal concluded the property owners' reliance on the commission's long period of inaction to believe that it would never enforce the relevant restrictions was not reasonable. The court noted that if such reliance were reasonable, "then more generally, one could argue against the enforcement of a law that had not been enforced for many years and seek estoppel on that ground. However, courts have never accepted such reasoning. On the contrary, the mere failure to enforce the law, without more, will

not estop the government from subsequently enforcing it. [Citations.]" (*Feduniak, supra*,148 Cal.App.4th at p. 1369.) Additionally, the *Feduniak* court reasoned estoppel could not be applied because it would nullify a strong public policy supporting the protection and preservation of the California coast. (*Id.* at p. 1375.)

Likewise, in *Golden Gate, supra*, 165 Cal.App.4th 249, the court refused to apply estoppel to prevent the county from enforcing an order requiring demolition and removal of structures from an island the club owned. The club purchased the island in 1966 and developed it without obtaining required permits. In 1970, the county issued a notice of violation. The club did not remove any of the offending development, and instead added to the development without obtaining permits. (*Id.* at p. 254.) In 2003, the county issued another notice of violation. In 2005, the county ordered the club to remove all structures from the island. (*Ibid.*) The club argued the county should be estopped from enforcing the order based on the county's inaction, county suggestions—later rescinded—that the club apply to have the island rezoned, and a county employee's statement that the county would not " 'hassle' " the club about its violations. (*Id.* at pp. 257–258.)

The Court of Appeal found the club did not show it was ignorant of true facts, in that it was aware its development violated land use and zoning laws, and that it did not show it suffered actual injury in reliance on the county's actions or inactions. The court also concluded there were no exceptional circumstances that would allow estoppel to be applied against the county, a governmental entity. The court reviewed the substantial authority adopting this approach, noting the cases "establish that in the absence of exceptional circumstances, the doctrine of equitable estoppel will not be applied to allow a landowner to circumvent land use restrictions even when the landowner relies on the public entity's express representation that the landowner's plans comply with the entity's land use requirements, and certainly not when the public entity simply fails to take early action to warn the landowner the plans violate the land use requirements." (*Golden Gate, supra*, 165 Cal.App.4th at p. 262.) Despite more than 30 years of government inaction, there were no grounds to override the significant public interest embodied in the relevant land use restrictions, and there were no exceptional circumstances warranting application of equitable estoppel. (*Id.* at pp. 262–263.)

■ The case at bar is no different. As in *Feduniak*, West Washington failed to show its reliance on Caltrans's inaction was reasonable. West Washington did not claim to rely on any affirmative statements or actions from Caltrans when it purchased the building and wallscape. Indeed, West Washington's principal testified it did not attempt to determine whether the wallscape had a valid Caltrans permit. Instead, West Washington relied purely

on government inaction. "[T]he mere failure to enforce the law, without more, will not estop the government from subsequently enforcing it. [Citations.]" (*Feduniak, supra*, 148 Cal.App.4th at p. 1369.)

But even if West Washington had established all of the requisite elements of estoppel, there are no grounds to override the public interest protected by the Act. The provisions of the Act are intended to benefit the public and represent a strong public policy. (*Ryan, supra*, 39 Cal.App.3d at p. 811; *Outdoor Media, supra*, 13 Cal.App.4th at pp. 1078–1079 [" 'To avoid a reduction in federal aid highway funds to which it would otherwise be entitled, a state must provide for "effective control" of billboards. [Citations.]' "].) Section 5226, part of the Act, states: "The regulation of advertising displays adjacent to any interstate highway or primary highway as provided in Section 5405 is hereby declared to be necessary to promote the public safety, health, welfare, convenience and enjoyment of public travel, to protect the public investment in such highways, to preserve the scenic beauty of lands bordering on such highways, and to insure that information in the specific interest of the traveling public is presented safely and effectively, recognizing that a reasonable freedom to advertise is necessary to attain such objectives. . . ." Applying estoppel here would effectively nullify this policy.

Moreover, there are no exceptional circumstances warranting application of equitable principles. *Mansell* provides a helpful illustration of "exceptional circumstances." In *Mansell*, the California Supreme Court considered whether the City of Long Beach could be estopped from asserting paramount title over certain tidelands. Private owners had acquired and developed some of the lands for nearly 50 years. Development was encouraged by the city. The city granted building permits, approved subdivision maps, constructed and maintained streets and city services, and collected taxes from private owners of the land. (*Mansell, supra*, 3 Cal.3d at p. 487.) The state and city had long been aware of serious and complex title problems in the area and did not resolve the issues. Thousands of citizens had settled on the contested lands. (*Id.* at p. 499.) The government itself sought to relinquish its claims to the tidelands. (*Id.* at pp. 475–477.)

Thus, our high court concluded: "[T]he rare combination of government conduct and extensive reliance here involved will create an extremely narrow precedent for application in future cases. . . . We are here concerned with thousands of homeowners who, through the long continuing conduct of the government entities involved, have been led to believe and have acted upon the belief that the lands upon which they reside are their own private properties. Because similarly compelling circumstances will not often recur, the public policy [at issue] will not suffer substantial erosion as a result of the decision we reach today." (*Mansell, supra*, 3 Cal.3d at p. 500, citation

omitted.) These circumstances presented an "exceptional case" where justice required that the city be bound by an equitable estoppel. (*Id.* at p. 501.)

■ In contrast, this case involves only government inaction as the basis for the estoppel, an injustice that is purely economic in the form of lost potential or anticipated profits, and one that affects only a single property owner. (*Feduniak, supra,* 148 Cal.App.4th at p. 1377.) In addition, the circumstances suggest applying estoppel would create a broad precedent. Rather than a "rare combination of government conduct and extensive reliance," this case presents a combination of government inaction and unreasonable reliance. As stated in *Smith v. County of Santa Barbara* (1992) 7 Cal.App.4th 770, 775 [9 Cal.Rptr.2d 120], "[t]he point is that public policy may be adversely affected by the creation of precedent where estoppel can too easily replace the legally established substantive and procedural require-ments for obtaining permits." The trial court properly concluded it was not appropriate to apply estoppel in this case to prevent enforcement of the Act. As in *Golden Gate*, "[t]he present case by no stretch of the imagination approaches the exceptional circumstances present in *Mansell*." (*Golden Gate, supra,* 165 Cal.App.4th at p. 263.)

■ For the same reasons, the trial court properly refused to apply laches as a defense in this case. The defense of laches is not available when its application would nullify an important policy adopted for the public benefit. (*Golden Gate, supra,* 165 Cal.App.4th at p. 263; *Feduniak, supra,* 148 Cal.App.4th at p. 1381.)

## II. *The Trial Court Properly Sustained the Demurrer to the Inverse Condemnation Claim Without Leave to Amend*

West Washington argues that even if equitable estoppel and laches are not available to prevent removal of the full-size wallscape, estoppel may be the "basis" of an inverse condemnation claim. We again disagree.

■ The court in *Golden Gate* considered and rejected this argument. The property owner club contended "that even if the abatement order is affirmed, it may still be entitled to compensation on its claim for inverse condemnation on the theory the order 15 has resulted in a taking. The flaw in this argument is that the complaint did not allege facts sufficient to support the conclusion abatement would result in a taking. ' "Regulations regarding and restrictions upon the use of property in an exercise of the police power for an authorized purpose, do not constitute the taking of property without compensation or give rise to constitutional cause for complaint." ' (*People ex rel. Dept. Pub. Wks. v. Adco Advertisers* (1973) 35 Cal.App.3d 507, 512 [110 Cal.Rptr. 849].) There is some authority for the proposition there may be a

taking when a governmental authority adopts an ordinance severely restricting a landowner's use of its property even when the ordinance substantially advances legitimate government goals. [Citation.] The Club, however, cites no authority holding a landowner purchasing property subject to a restriction suffers a taking when the restriction is enforced. [¶] . . . The Club never had a property right to develop Golden Isle in violation of the County's land use requirements." (*Golden Gate, supra,* 165 Cal.App.4th at p. 267; see *People ex rel. Dept. of Transportation v. Hadley Fruit Orchards, Inc.* (1976) 59 Cal.App.3d 49, 53 [130 Cal.Rptr. 287] [nonconforming outdoor displays are public nuisances under the Act; "The abatement of a public nuisance pursuant to a reasonable exercise of the police power does not require the payment of compensation at all."].)

Here, West Washington purchased the wallscape subject to a restriction. The Act's provisions rendering the wallscape unlawful were already in effect when West Washington purchased the building and display. And, as explained above, Caltrans rebutted the section 5216.1 presumption that the display was "lawfully erected." Caltrans's enforcement of the Act was an exercise of police power for an authorized purpose and did not constitute a taking.

**(11)** Neither of the two cases West Washington relies on to support its argument compel a contrary result. In *Traverso v. People ex rel. Dept. of Transportation* (1993) 6 Cal.4th 1152 [26 Cal.Rptr.2d 217, 864 P.2d 488], our Supreme Court held a billboard constitutes a protectable property interest, even if it is in violation of the Act. (*Traverso,* at p. 1161.) As such, the government must afford the billboard owner the procedural due process required by the Constitution—notice and the opportunity to be heard—before removing or destroying a billboard found to be in violation of the Act. (*Traverso,* at pp. 1161–1162.) This was the only issue considered in *Traverso.* West Washington has not claimed it did not receive sufficient procedural due process in this case. The *Traverso* court did "not question that Caltrans has the authority, under the state's legitimate police power, to remove and destroy any billboard found to be in violation of the Act," and neither considered nor concluded that requiring removal of an illegal display requires compensation as a taking. (*Ibid.*) " '[C]ases are not authority for propositions not considered.' " (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].)

*Ryan* also fails to provide persuasive legal authority for West Washington's inverse condemnation claim. As explained above, in *Ryan,* the court declined to apply equitable estoppel to prevent removal of unlawful billboards because it would nullify an important public policy. However, the court added a "caveat" that it would not violate a strong public policy to require the department to pay just compensation upon removal of the billboards. (*Ryan,*

*supra*, 39 Cal.App.3d at p. 813.) In *Ryan*, the sign owner moved its billboards at the direction of the Department of Public Works for a highway-widening project. The department then issued permits for the billboards in their new location, but later determined the signs violated the Act. Had the signs remained in their original location, they would have become nonconforming following statutory amendments, but the department would have been required by statute to pay just compensation for the signs before their removal. (39 Cal.App.3d at pp. 808, 814.) Or, had the sign owner not removed the billboards to clear the right-of-way, it would have been entitled to compensation in the condemnation action the department conducted to purchase the right-of-way. (*Id.* at pp. 807–808, 814.) The court observed that "the Department ordered Ryan to clear the right-of-way, and in reliance thereon, Ryan removed the billboards and placed them outside the right-of-way line[;] . . . the fact that the movement of the billboards was an involuntary displacement resulting from the Department's road-widening activities may be sufficient to justify the application of the doctrine of equitable estoppel." (*Id.* at p. 814.)

As an initial matter, we note that the court's statements regarding estoppel and inverse condemnation are dicta. There was no issue of inverse condemnation before the court. Even assuming the analysis has precedential or persuasive value, *Ryan* must be distinguished from this case based on its facts. In *Ryan*, the department made affirmative requests and statements that caused the sign owner to relocate the sign, thereby rendering it impossible for the owner to receive compensation that would otherwise have been necessary. The signs in *Ryan* were at one time in compliance with state laws. They only became unlawful following amendments to the Act, and the relocation which took place at the department's request.

The facts here are markedly different. The evidence was that the wallscape was not lawfully erected. No one ever attempted to seek a permit for the display, despite statutory requirements. Further, West Washington cannot claim it relied on any affirmative actions on the part of Caltrans that negated its right to receive compensation it would otherwise be owed. The only Caltrans conduct complained of in this case is government *inaction*, and West Washington's unreasonable reliance on that inaction. There is no strong public policy to provide compensation to a property owner upon removal of a display that has been unlawful since its erection. (See, e.g., *People ex rel. Dept. Pub. Wks. v. Golden Rule Church Assn., supra*, 49 Cal.App.3d 773 [sign not lawfully in existence could be removed without compensation].) The trial court properly refused to apply equitable principles to allow West Washington's inverse condemnation claim to proceed.

## DISPOSITION

The judgment is affirmed.

Flier, J., and Grimes, J., concurred.