Filed 03/19/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| J. ARTHUR PROPERTIES, II, LLC et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF SAN JOSE et al., <br><br> Defendants and Respondents. | H042938 <br> (Santa Clara County <br> Super. Ct. No. 1-15-CV-279390) |

Plaintiff SV Care operated a medical marijuana collective in a commercial zoning district in San Jose. Plaintiff J. Arthur Properties, II, LLC owns the building in which SV Care operated. Defendants City of San Jose and City of San Jose Appeals Hearing Board (collectively, the City) determined that a medical marijuana collective was not an authorized use of the subject property and ordered the collective to close. Plaintiffs appeal the denial of their petition for writ of administrative mandate, arguing that the collective is a legal nonconforming use and that the City should be equitably estopped from forcing plaintiffs to close. For the reasons stated here, we will affirm the trial court's decision.

## I. ADMINISTRATIVE AND TRIAL COURT PROCEEDINGS

Plaintiffs[1] own the subject property and the medical marijuana collective at issue. At all relevant times, the subject property was zoned Commercial Office under the City of San Jose Municipal Code (Municipal Code). The Municipal Code defines the

---

[1] Plaintiff J. Arthur Properties, II, LLC owns the subject property with another owner who is not a party to this appeal. Plaintiff SV Care owned the medical marijuana collective at issue with an individual who is not a party to this appeal.

Commercial Office zone as a "district in or near residential areas or between residential and commercial areas." The property abuts a residential use.

## A. REGULATIONS IN EFFECT WHEN THE COLLECTIVE OPENED

Plaintiffs' collective opened in 2010. At that time, the Municipal Code did not list medical marijuana collectives or any other marijuana-specific uses in the table of permitted uses. (The Municipal Code had formerly listed medical marijuana dispensaries as a use for which an administrative permit could be obtained, but all references to marijuana-related uses were removed from the Municipal Code in 2001.) The Municipal Code specified that "uses not listed on [the applicable table] are not Permitted." That table *did* list "medical offices" as a permitted use in the Commercial Office zone.

## B. MARIJUANA BUSINESS TAX

After the collective opened, voters passed a local measure adding a marijuana business tax to the Municipal Code. The tax applies to anyone "engaging in marijuana business" within the City. The Municipal Code states that the marijuana business tax was "enacted solely to raise revenue for municipal purposes and [was] not intended for regulation."

Businesses are required to obtain a business tax certificate from the City. The Municipal Code states that the certificate tax and marijuana business tax are "solely for the purpose of obtaining revenue and are not regulatory permit fees." A Municipal Code section, entitled "Payment of tax does not authorize unlawful business," provides: "The payment of a business tax required by this chapter, and its acceptance by the city, shall not entitle any person to carry on any marijuana business unless the person has complied with all of the requirements of this code and all other applicable laws, nor to carry on any marijuana business in any building or on any premises in the event that such building or premises are situated in a zone or locality in which the conduct of such marijuana business is in violation of any law." The collective's business tax certificate contains the following disclaimer: "Issuance of this certificate is not an endorsement, nor a certificate

2

of compliance with other ordinances or laws, nor an assurance that the proposed use is in conformance with the City's Building/Fire/Zoning regulations." The City does not dispute that plaintiffs paid all applicable marijuana business taxes for the collective.

## C. ZONING AMENDMENTS

The Municipal Code was amended in 2011 specifically to regulate medical marijuana collectives, but that regulatory scheme was suspended almost immediately due to a referendum petition challenging the amendments. The Municipal Code was amended again in 2014 specifically to regulate medical marijuana. Under the 2014 amendments, "medical marijuana collective" is not listed as a permissible use in the Commercial Office district. It is, however, listed as a restricted use in certain industrial zoning areas.

## D. COMPLIANCE ORDER AND ADMINISTRATIVE PROCEEDINGS

Plaintiffs received a compliance order in 2014 stating that a medical marijuana collective "was never an allowed use in the CO Zoning District." The order asserted that plaintiffs' collective "is in violation of the [Municipal Code] and is not allowed." Plaintiffs disputed the compliance order by requesting a Director's Hearing conducted by a City hearing officer. At that hearing, plaintiffs argued their collective was a legal nonconforming use because it met the definition of a medical office, which was a permissible use when the collective opened. A deputy city attorney argued that the collective did not meet the Municipal Code definition of a medical office. He stated that the "property was a priority that's been recognized by the City and the City Council, as there had been prior directions to close medical marijuana collectives from the City Council, which have a zero lot line or abut a ... property with a residential use." The hearing officer upheld the compliance order, and plaintiffs appealed to the City's Appeals Hearing Board.

An inspection report prepared before the appeals board hearing noted that one of the City's code enforcement inspectors had met with the collective's business owner in

2010 and told him "this location may not qualify due to the residential use located next door." The City filed a brief with the Appeals Hearing Board that contained additional information about City Council directives regarding medical marijuana. According to the brief, in 2012 the City Council "directed Code Enforcement to focus its enforcement priorities on … collectives" operating near schools. In 2013, the City Council added to the priority list collectives "located on a parcel that shares a 'zero lot line' with residential uses." The City's code enforcement department had sent compliance orders to several collectives meeting those criteria, including plaintiffs' collective. After a hearing, the Appeals Hearing Board upheld the compliance order.

### E. TRIAL COURT WRIT PROCEEDINGS

Plaintiffs petitioned the trial court for a writ of administrative mandate (Code Civ. Proc., § 1094.5), arguing that the collective was a legal nonconforming use because it met the definition of a medical office and that the City should be estopped from enforcing the Municipal Code because they collected taxes from plaintiffs. Plaintiffs appeal from the trial court's order denying their mandate petition.[2]

## II. DISCUSSION

### A. LEGAL NONCONFORMING USE

Plaintiffs argue that the collective is a legal nonconforming use because it is a medical office, a use that has been allowed in the Commercial Office zoning district since the collective opened in 2010. The Municipal Code defines medical office as "offices of doctors, dentists, chiropractors, physical therapists, acupuncturists, optometrists and other

---

[2] There is no judgment in the record. As neither party disputes that the order denying the petition completely disposed of the matter, we exercise our discretion to treat the trial court's order as appealable. (See *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901 ["Reviewing courts have discretion to treat statements of decision as appealable."].)

4

similar health related occupations, where patients visit on a daily basis." The Municipal Code defines a legal nonconforming use as: "Any lawful use of land or structure, which ceases to conform to the provisions of this Title upon a rezoning or annexation, or because of changes in the regulations under this Title."

### 1. Standard of Review

The interpretation and application of the Municipal Code's definition of "medical office" is a question of law that we review de novo. (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1081 (*Carrnshimba*).) Local government laws are interpreted consistent with the general rules of statutory interpretation. (*Russ Bldg. Partnership v. City and County of San Francisco* (1988) 44 Cal.3d 839, 847, fn. 8.) We look to ascertain the intent of the legislative body to effectuate the purpose of the law. To do so, we begin with the plain language of the enactment. (*Id.* at p. 847.) If the language is reasonably susceptible of more than one meaning, we may look to extrinsic aids to determine the purpose of the law, "including the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality." (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 776.) Canons of construction also aid our interpretation, including the principle of *ejusdem generis*: "when a particular class of things modifies general words, those general words are construed as applying only to things of the same nature or class as those enumerated." (*People v. Arias* (2008) 45 Cal.4th 169, 180 (*Arias*).)

Though we independently judge the text of the Municipal Code, we give appropriate respect to a government entity's interpretation of its own laws. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 (*Yamaha*).) We are inclined to defer to a government entity's interpretation of its own regulation " 'since the agency is likely to be intimately familiar with regulations it authored and sensitive to the practical implications of one interpretation over another.' " (*Ibid.*) We may defer especially to interpretations which the government entity has consistently maintained

over time. (*Id.* at p. 13.) Deference may also be appropriate where the entity has " 'expertise and technical knowledge, especially where the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion.' " (*Id.* at p. 12.)

### 2. Municipal Code Definition of Medical Office

Plaintiffs argue that a medical marijuana collective is a medical office because it is a health-related occupation. They note that the term medical generally means something curative or related to healing, and they cite Health and Safety Code section 11362.5, subdivision (b)(1)(A), which states that one purpose of the Compassionate Use Act of 1996 is to "ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use ... has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment" of various ailments. Plaintiffs contend that because medical marijuana collectives provide a medical and health-related service, they should be considered medical offices under the Municipal Code.

The City argues that all of the specifically enumerated professions in the Municipal Code definition of medical office "have in common the fact that they are physicians or similar professions and that they have patients." The City contrasts those characteristics with medical marijuana collectives, which it argues have neither physicians nor their own patients because members of collectives "are patients of the physicians who prescribed marijuana."

Though the definition at issue is reasonably susceptible of both proffered interpretations, we agree with the City that a medical marijuana collective is not a "medical office" under the Municipal Code. Because a medical marijuana collective does not fall within any of the specifically listed occupations (i.e., doctors, dentists, chiropractors, physical therapists, acupuncturists, or optometrists), a collective would have to be a "similar health related occupation" to qualify as a medical office. Applying

the principle of *ejusdem generis*, the phrase "similar health related occupations" refers to occupations of the same nature or class as the listed occupations. (*Arias*, *supra*, 45 Cal.4th at p. 180.) There is no evidence that medical marijuana collectives have doctors or similar health care professionals on site treating patients; they are therefore dissimilar to the examples listed in the Municipal Code definition. And unlike medical marijuana collectives, none of the listed occupations provides a good or service that is illegal under federal law. (See 21 U.S.C. §§ 812(b)–(c), 841–844.) Thus we find textual support to exclude medical marijuana collectives from the definition of medical office.

Plaintiffs argue that we should not defer to the City's interpretation because the "terms 'medical office' and 'other similar health related occupations' are not technical, obscure or complex." But given that medical marijuana collectives are unique entities because marijuana remains illegal for most purposes under federal law, whether such a land use is authorized by a catchall provision in a local zoning classification is intertwined with issues of fact, policy, and discretion. (See *Yamaha*, *supra*, 19 Cal.4th at p. 12.)

Further support for deference comes from evidence suggesting the City consistently interpreted the medical office category to exclude medical marijuana collectives. A City inspector informed the collective's owner the year it opened that the location of the collective "may not qualify due to the residential use located next door." The City argued (both orally during the Director's hearing and in a brief submitted to the Appeals Hearing Board) that the City Council had instructed the code enforcement department to focus on closing collectives located next to residential uses. As medical offices are permitted in Commercial Office districts and the Commercial Office district consists of uses "near residential areas or between residential and commercial areas," the City Council's directive supports a finding that the City never interpreted the medical office use to include medical marijuana collectives. The compliance order issued here is also consistent with that interpretation. (See *Carrnshimba*, *supra*, 215 Cal.App.4th at

7

p. 1091.)  And the City's 2011 and 2014 ordinances specifically regulating medical marijuana collectives, though not dispositive, suggest the Council's intent to regulate a use not previously permitted.[3]  (See *City of Irvine v. Southern California Assn. of Governments* (2009) 175 Cal.App.4th 506, 522 [When a legislative body amends a law, " 'we presume it " 'indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one.' " ' "].)

Anticipating the City's argument that a medical marijuana collective is not a medical office because collectives are not regulated by a state agency with authority to license and discipline them, plaintiffs note that starting in 2016 collectives are now licensed and regulated under the Business and Professions Code.  (See Stats. 2016, ch. 32, § 6, p. 1240; see also Bus. & Prof. Code, § 26000 et seq. [amended by Stats. 2017, ch. 27, § 3, to replace the 2016 regulatory scheme].)  But having determined that a medical marijuana collective is not a medical office under the Municipal Code, the fact that collectives are now regulated under state law does not persuade us otherwise.

Giving due deference to the City's interpretation, we conclude that the medical office use category in the Municipal Code does not include medical marijuana collectives.  Because plaintiffs' collective was not a permitted use when it opened, it cannot be a legal nonconforming use.

---

[3]  In finding the City has consistently interpreted its Municipal Code to exclude medical marijuana collectives from the medical office use, we do not rely on exhibits four and five to the City's request for judicial notice.  Those exhibits are complaints filed against the City in superior court by other medical marijuana collectives, along with attachments that appear to be compliance orders issued by the City.  They were not provided to the Appeals Hearing Board or to the trial court.  We granted judicial notice because they are court records.  (Evid. Code, § 452, subd. (d).)  But in taking judicial notice of court records, we do not take notice of the truth of any matters stated therein. (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 987–988.)

8

## B. ESTOPPEL

Plaintiffs contend that even if the collective is not a legal nonconforming use, the City should be equitably estopped from enforcing the Municipal Code because it unreasonably delayed issuing a compliance order and because it induced detrimental reliance by collecting marijuana business taxes from plaintiffs.

### 1. Standard of Review

To trigger the doctrine of equitable estoppel, plaintiffs must show that: (1) the City knew that medical marijuana collectives were an impermissible use; (2) the City intended, by delaying enforcement and collecting marijuana business taxes, to induce plaintiffs into operating a medical marijuana collective (or acted in a manner entitling plaintiffs to perceive such an intent); (3) plaintiffs did not know that medical marijuana collectives were unauthorized; (4) plaintiffs detrimentally relied on the City's conduct; and (5) the injustice that would result from a failure to estop the City is so great that it outweighs the effect the estoppel would have on public policy or the public interest. (See *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1359 (*Feduniak*).) "Although estoppel is generally a question of fact, where the facts are undisputed and only one reasonable conclusion can be drawn from them, whether estoppel applies is a question of law," reviewed de novo. (*Id.* at p. 1360; accord *Mt. Holyoke Homes, LP v. California Coastal Com.* (2008) 167 Cal.App.4th 830, 840.)

### 2. Reliance on Delayed Enforcement Was Not Reasonable

Plaintiffs argue there is no factual support for the City's claim that it consistently interpreted the Municipal Code to exclude medical marijuana collectives, and contend that the City's delayed enforcement induced detrimental reliance by plaintiffs. As we have discussed, evidence that the City consistently interpreted the Municipal Code to exclude medical marijuana collectives includes a statement by an inspector directly to the collective's owner the year the collective opened that its location "may not qualify due to the residential use located next door." As plaintiffs did not dispute the accuracy of that

9

statement, uncontradicted evidence in the record shows plaintiffs were on notice in 2010 that their collective might not be a permissible land use.

Although it took the City multiple years to issue a compliance order, "the mere failure to enforce the law, without more, will not estop the government from subsequently enforcing it." (*Feduniak*, *supra*, 148 Cal.App.4th at p. 1369; see also *Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 262 (*Golden Gate*) ["[T]he doctrine of equitable estoppel will not be applied to allow a landowner to circumvent land use restrictions ... when the public entity simply fails to take early action to warn the landowner" of land use violations].)

Plaintiffs received notice from a City inspector that the collective might not be a permissible land use, and they point to no affirmative representations by the City to the contrary. (See *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1318 [To support estoppel, the " 'representation, whether by word or act, to justify a prudent man in acting upon it, must be plain, not doubtful or matter of questionable inference. *Certainty* is essential to all estoppels.' "].) Plaintiffs list a number of actions the City could have taken to make its position clearer, such as enacting a moratorium on medical marijuana collectives, expressly listing medical marijuana collectives as an impermissible use, and expressly redefining the term medical office specifically to exclude medical marijuana collectives. Those actions would have clarified the City's position, but their absence does not make reliance on delayed enforcement reasonable.

### 3. Reliance on Payment of Taxes was Not Reasonable

Plaintiffs argue that by collecting a marijuana business tax and requiring a business tax certificate, the City induced reasonable reliance by plaintiffs. The inescapable flaw in plaintiffs' argument is that express disclaimers in the Municipal Code and on the business tax certificate unambiguously state that collection of taxes is not authorization to operate a medical marijuana collective. Two passages in the Municipal Code state that the marijuana business tax was enacted to raise revenue and was not

10

intended to be a regulatory permit fee.  Another Municipal Code section, which we have previously quoted, is entitled "Payment of tax does not authorize unlawful business." And the business tax certificate issued to plaintiffs states that it is "not an endorsement, nor a certificate of compliance with other ordinances or laws, nor an assurance that the proposed use is in conformance with the City's Building/Fire/Zoning regulations."

Plaintiffs argue the "prolix phrase in a 13-page tax ordinance" was "wholly inadequate" to inform them that they were operating illegally.  But plaintiffs had constructive knowledge (if not actual knowledge) of the disclaimers.  They received business tax certificates directly from the City, and the marijuana business tax disclaimers were in the publicly available Municipal Code, easily found using reasonable care or diligence.  (*John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1190 [Constructive knowledge is "knowledge 'that one using reasonable care or diligence should have, and therefore is attributed by law to a given person.' "].)  In light of the express disclaimers, reliance on paying required business taxes as authorization to operate a medical marijuana collective is unreasonable as a matter of law.

### 4. Balancing Estoppel and the Public Interest

Estoppel will be applied "in the land use context in only ' "the most extraordinary case where the injustice is great and the precedent set by the estoppel is narrow." ' " *Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1263 (*Schafer*).)  Plaintiffs acknowledge that applying equitable estoppel against a public entity requires a showing that "the avoidance of injustice in the particular case justifies any adverse impact on the public interest."

Plaintiffs have not demonstrated injustice here.  There is no evidence that plaintiff J. Arthur Properties, II, LLC will be unable to rent the space formerly occupied by the collective to a different tenant.  And plaintiff SV Care did not present evidence showing it will be unable to open a medical marijuana collective at another location.  At most, plaintiffs would experience economic hardships in finding a new tenant and relocating

11

the collective.  As *Schafer* noted, courts have found no equitable estoppel against government entities in the face of much more significant economic hardships.  (*Id.* at pp. 1264–1265, citing *West Washington Properties, LLC v. Department of Transportation* (2012) 210 Cal.App.4th 1136, 1141, 1150 [up to $12 million in lost revenue from reducing size of an advertising space that had existed for 20 years]; *Golden Gate*, *supra*, 165 Cal.App.4th at pp. 254, 259–263 [requiring removal of 28 dwellings and other structures]; *Feduniak*, *supra*, 148 Cal.App.4th at pp. 1358, 1379–1380 [$100,000 to remove personal three-hole golf course].)

Against plaintiffs' minimal showing of hardship we must weigh the effect estoppel would have on public policy and the public interest.  Public policy favors eliminating nonconforming uses.  (*Feduniak*, *supra*, 148 Cal.App.4th at p. 1374.)  And the City has a fundamental interest in locally determining where medical marijuana collectives are authorized.  The public interest embodied in these policies outweighs the potential impacts to plaintiffs.

### III.    DISPOSITION

The trial court's decision denying the petition for writ of mandate is affirmed.  The City is entitled to its costs on appeal.

12

_____

Grover, J.

**WE CONCUR:**

_____

Elia, Acting P. J.

_____

Premo, J.

**H042938 -** *J. Arthur Properties, II, LLC et al. v. City of San Jose et al.*

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-15-CV-279390 |
|---|---|
| Trial Judge: | The Honorable Maureen A. Folan |
| Counsel for Plaintiffs/Appellants:<br>J. ARTHUR PROPERTIES, II, LLC<br>et al. | Jeanine G. Strong<br>Strong Appellate Law |
| Counsel for Defendant/Respondent:<br>CITY OF SAN JOSE et al. | Richard Doyle,<br>  City Attorney<br>Nora Frimann,<br>  Assistant City Attorney<br>Margo Laskowska,<br>  Sr. Deputy City Attorney<br>Office of the City Attorney<br>City of San Jose |

**H042938 -** *J. Arthur Properties, II, LLC et al. v. City of San Jose et al.*